# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PAMELA SPAULDING    )
            )
    Plaintiff,   )   No. 05 C 2489
            )
    vs.     )
            )   Mag. Judge Michael T. Mason
JO ANNE BARNHART,   )
Commissioner of Social Security )
            )
    Defendant.   )

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Pamela Spaulding ("Spaulding" or "claimant"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Spaulding's claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"), 42 U.S.C. §§ 216(i) and 223, and for Supplemental Security Income ("SSI") payments, 42 U.S.C. §§ 1602 and 1614(a)(3)(A). The Commissioner filed a cross motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, claimant's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied.

## PROCEDURAL HISTORY

The claimant filed an application for DIB and SSI on October 29, 2002. (R. at 44–46). She alleged an onset date of May 1, 2001. (R. at 44). Spaulding's claim was

initially denied on March 20, 2003, and again upon reconsideration on June 5, 2003. (R. at 31–35, 38–41). Claimant then filed a request for a hearing before an administrative law judge ("ALJ"), which was held before ALJ John L. Mondi on August 25, 2004. (R. at 13, 42). Ms. Spaulding, testified at the hearing and was represented by her attorney, Lindsay Parkhurst. (*Id.*). Claimant's mother, Ruth Organ, also testified. (*Id.*). On December 10, 2004, ALJ Mondi issued a written decision denying Spaulding's claim for DIB and SSI benefits. (R. at 19). On February 25, 2005, the Appeals Council denied claimant's request for review, and ALJ Mondi's decision became the "final decision" of the Commissioner. (R. at 5); See *Estok v. Apfel*, 152 F.3d 636, 637 (7th. Cir. 1998). Spaulding then initiated this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### Medical Evidence

Claimant argues that she suffers from "severe mental impairments, which include major depression, anxiety, panic attacks, memory impairment and concentration problems." Pl. Br. at 2. Claimant has a history of depression and alcohol addiction. (R. at 285–89). During 1992 and 1993, she was treated with Amitriptyline, Elavil and Zoloft. (*Id.*).

Claimant's alleged mental impairments stem from a motor vehicle accident on February 16, 2000, in which the claimant suffered a traumatic brain injury. (R. at 160). As a result of the accident, Spaulding also suffered a concussion, a left AC dislocation,

a pelvic fracture, multiple broken ribs and a left hip fracture.[1] (R. at 149, 293). Claimant was hospitalized for six weeks following the accident and then was transferred to an in-patient rehabilitation center for two weeks. (R. at 160). At the Brown Schools Rehabilitation Center ("BSRC"), claimant underwent speech therapy, occupational therapy and physical therapy. (R. at 139-156). A neuropsychological evaluation from April 12, 2000 indicates that claimant suffered from memory loss, verbal greater than visual. (R. at 149). Speech therapy records from April 14, 2000 indicate that claimant had "moderate to severe cognitive impairment characterized by confusion, disorientation, impulsive behavior, severely impaired memory, impaired organizational skills and decreased awareness of the problems she was experiencing." (R. a 144). The speech pathologist recommended that claimant attend individual speech/language therapy 8-10x per week for 2 weeks. (*Id*.).

Following her discharge from the BSRC, Spaulding went to Riverside Medical Center for several weeks of speech therapy. (R. at 157-172). At the initial evaluation, on May 10, 2000, Spaulding demonstrated deficits in attention, short term recall, long term recall, organizational skills, math skills and relational reasoning. (R. at 161). Claimant also exhibited impulsivity. (*Id*.). After six weeks of therapy, claimant demonstrated significant progress but impulsivity was still a problem for her. (R. at 171). The records indicate that Spaulding continued to exhibit mild cognitive deficits and impulsivity continued to impact her performance in cognitive tasks. (R. at 172). Spaulding was discharged on June 14, 2000. (R. at 171).

---

[1] Spaulding has not challenged the ALJ's decision on the grounds of any physical disability.

3

On June 29, 2000, Spaulding underwent a neuropsychological evaluation performed by Dr. Terrance McGovern. (R. at 173-180). Dr. McGovern found that Spaulding's verbal intelligence functioning had deteriorated and there were significant differences between her auditory and visual memory. (R. at 177, 179-80). He indicated that these findings are consistent with persons who suffered left hemisphere brain damage. (R. at 177, 179). Claimant's word finding was also severely impaired. (R. at 180). However, Dr. McGovern also concluded that Spaulding's test scores showed average intelligence and relatively intact memory functioning with verbal deficits. (*Id.*). Furthermore, Dr. McGovern indicated that claimant's prognosis for improvement was positive. (*Id.*).

On July 31, 2000, Spaulding underwent another psychological evaluation performed by Dr. Erwin Baukus. (R. at 181-187). Claimant reported numerous symptoms of depression including sleep disturbance, psychomotor agitation, feelings of worthlessness, difficulty concentrating and tearfulness. (R. at 183). Dr. Baukus found that Spaulding's affect was labile, that she was easily moved close to tears and that her mood was mildly depressed. (R. at 184). The mental capacity test results showed that Spaulding had some difficulty with judgment and her immediate memory and great difficulty with calculations, including serial 7's. (R. at 184-185). Claimant's scores on three of the clinical scales and the S1 scale of the Luria-Nebraska Neuropsychological Battery were elevated above the critical level. (R. at 185). Dr. Baukus noted that "such scores are considered abnormal and only two or more such critical elevations are necessary before the customer is considered likely to have brain damage." (*Id.*). Claimant was diagnosed with a history of alcohol abuse with abstinence since the motor

4

vehicle accident, traumatic brain injury, chronic depression with depression and anxiety prior to the accident. (R. at 186). Dr. Baukus noted specific areas of continuing problems, including: oral motor skills, visual acuity and naming, visual spacial organization, word repetition, spelling, verbal memory, visual and complex memory and complex verbal arithmetic. (*Id.*). Dr. Baukus also indicated that the testing revealed difficulties with concentration. (R. at 187). Finally, Dr. Baukus concluded that Spaulding is intellectually able to manage funds on her own behalf. (*Id.*).

In August 2000, after relocating to live with her mother, Spaulding began treatment with Dr. Mary Belford, a psychiatrist. (R. at 282–84). Dr. Belford indicated that claimant's concentration was poor, her self esteem was low and she was having trouble sleeping without medication. (R. 282). Spaulding reported that prior to her motor vehicle accident, she drank alcohol daily. (R. 283). Since the accident, claimant had not consumed any alcohol or drugs. (*Id.*). Dr. Belford diagnosed Spaulding with major depression and prescribed Prozac, Remeron and Xanax. (*Id.*).

From August 2000 until January 2003, Dr. Belford continued to see Spaulding roughly once every three months for medication monitoring. (R. at 244–48, 271–83). Spaulding's symptoms varied but Dr. Belford consistently diagnosed Spaulding with major depression. (*Id.*). On several occasions, Dr. Belford diagnosed claimant with an additional disorder. For instance, in January 2001, Dr. Belford diagnosed claimant with major depression and probable post traumatic stress disorder. (R. at 279). In September 2001 and March 2002, Dr. Belford diagnosed major depression and alcohol dependence. (R. at 275, 277). In May 2002, Dr. Belford diagnosed claimant with major depression and generalized anxiety disorder. (R. at 274). In July 2002 and January

5

2003, Dr. Belford diagnosed major depression and panic disorder. (R. at 272-273).

In March 2002, Spaulding was hospitalized for several days after police found her intoxicated in her mother's attic holding a loaded pistol. (R. at 216, 221). She was taken to Riverside Medical Center where she was cared for by Dr. Nepomeuceno, Dr. Bongard, and Dr. Belford. (R. at 216-17, 219-20, 227-28). Both Dr. Bongard and Dr. Belford diagnosed Spaulding with major depression, suicidal ideation, and alcohol dependence. (R. at 216-17, 219). Dr. Nepomeuceno also diagnosed Spaulding with major depression with possible suicidal ideations. (R. at 228).

Dr. Belford's records following the March 2002 hospitalization indicate that claimant was abstaining from alcohol. (R. at 244-48, 272-74). In July 2002, claimant was tearful, more anxious and overwhelmed due to financial problems. (R. at 273). Dr. Belford noted that Spaulding was regressing but that she denied alcohol use. (*Id.*). Dr. Belford opined that Spaulding was not capable of working at that time because she could barely concentrate well enough to relay information to the doctor when asked direct questions. (*Id.*). However, Dr. Belford also stated that once claimant's financial situation cleared up, she would be in a better position to start looking for some kind of employment. (*Id.*).

Claimant was examined by Dr. Baukus for a second time on February 27, 2003. (R. at 249-254). Claimant reported that had she consumed alcohol one or two times since her hospitalization in March 2002. (R. at 251). Dr. Baukus described claimant's affect as stable and her mood as mildly depressed. (R. at 252). Once again, Spaulding's mental capacity test results showed that she experienced some difficulty with judgment and her immediate memory and great difficulty with calculations,

6

including serial 7's. (R. at 252-53). Dr. Baukus diagnosed claimant with traumatic brain injury, alcohol dependence with unsuccessful attempts at abstention and depression with anxiety. (R. at 253).

State agency psychologist Carl A. Harmsmeyer, Ph.D., completed a residual functional capacity ("RFC") assessment of claimant on March 5, 2003. (R. 334-36). He noted that Spaulding was not significantly limited in areas of understanding and memory, sustained concentration and persistence, social interaction, or adaptation. (R. at 334–36). Dr. Harmsmeyer found that claimant exhibited moderate limitation in her ability to understand, remember and carry out detailed instructions. (R. at 334). Dr. Harmsmeyer concluded that Spaulding had "the mental capacity to perform simple tasks." (R. at 336). His conclusions were affirmed by reviewing psychologist Leslie Ryans, Ph.D. (*Id.*). On the same day, Dr. Harmsmeyer also found that claimant was mildly limited with respect to activities of daily living and moderately limited with respect to maintaining social functioning and maintaining concentration, persistence or pace. (R. at 265). Dr. Harmsmeyer also indicated that claimant had one to two episodes of decompensation. (*Id.*).

On March 27, 2003, Dr. Belford opined that Spaulding was permanently disabled due to major depression and panic disorder. (R. at 271). Dr. Belford also stated that claimant was unable to work at that time and that she was unable to return to her past position. (*Id.*). Dr. Belford indicated that she did not expect claimant's condition to improve to the point where she could function in a work environment on a consistent basis in the future. (*Id.*).

In May 2003, Spaulding was referred to the Helen Wheeler Center, where she

7

initiated treatment with Dr. Shital Mehta. (R. at 357–59). Dr. Mehta diagnosed generalized anxiety disorder and major depression which was recurrent and severe with psychosis. (R. at 358). Dr. Mehta prescribed Prozac, Risperdal, Restoril, and Xanax. (R. at 359). Spaulding initially complained of auditory hallucinations, which subsided after she started taking Risperdal. (R. at 355). Between May 2003 and June 2004, Dr. Mehta's psychiatric progress notes indicate that Spaulding was either doing "very well," "fairly well," or "much better" on her medications. (R. at 347–54). However, claimant consistently reported trouble with sleeping. (Id.). Furthermore, at times, claimant reported that she was more depressed or down than usual. (R. at 349, 355). Dr. Mehta prescribed Wellbutrin and Trazodone in addition to Spaulding's other medications. (R. at 351-52). Dr. Mehta's records also reflect that claimant was abstaining from alcohol. (R. at 352-55).

**Claimant's Testimony**

Spaulding testified before the ALJ on August 25, 2004. (R. at 380). She testified that she was forty-seven years old, divorced, and had two adult children. (R. at 385). She did not graduate from high-school, but received her GED. (R. at 386). Spaulding testified that she lives with her seventy-five year old mother, who supports her. (R. at 397).

Spaulding testified that since her alleged onset date, she had been unable to maintain employment. (R. at 386). She testified as to three jobs she held after her onset date. (R. at 388). She worked for three weeks as a receptionist in a law office, but was terminated after making too many mistakes, such as forgetting to take down phone messages. (R. at 387). She also testified that she was unable to remember

8

instructions from one day to another, and had to be shown again. (*Id.*). Spaulding also assisted the manager of an apartment complex for approximately one month. (*Id.*). She testified that she could not perform the job because she could not remember things. (*Id.*). Claimant later testified that she had a customer service job with a newspaper for four days, but that the job was too hectic for her to handle. (R. at 394).

Prior to Spaulding's motor vehicle accident, she had worked for four years as an administrative assistant at Ameriplan. (R. at 388). At that time, she would have two or three drinks a night after work. (R. at 389). Claimant stated that her drinking never interfered with her work. (*Id.*). She testified that she no longer drinks, and that she stopped immediately following the accident in 2000. (R. at 390). However, claimant admitted that she had one relapse when she could not afford her medication and was not taking it regularly. (*Id.*). It was around the time that she was suicidal. (R. at 396). Spaulding testified that between the time of the accident and before she attempted suicide, she would have a drink "maybe once in a while." (*Id.*). Spaulding also testified that the medication she takes now helps prevent her from desiring alcohol, and that alcohol is not a factor in her life. (*Id.*).

Spaulding testified that at the time of the hearing, she was suffering from anxiety, depression, insomnia and panic attacks. (R. at 389). She also mentioned physical limitations in her leg stemming from the accident. (R. at 390–91). Claimant testified that she takes Risperdal, Xanax, Prozac, Trazodone, Wellbutrin and Prinivil. (R. at 392). She said the medications help and that there are no side effects. (*Id.*). Spaulding currently lives with her mother at her mother's house, where she is able to help around the house with chores such as dusting, vacuuming and washing clothes.

9

(R. at 394). She is also capable of going grocery shopping using a list that she makes out. (R. at 393). Spaulding testified that she can drive a car provided that she stays in familiar areas and uses the same route every time. (R. at 394–95).

Spaulding further testified to her memory and anxiety problems, stating that she forgets phone calls, and has difficulty with time in that she cannot remember if events happened two days ago or a week ago. (R. at 397). She also has difficulty with spelling and basic math. (Id.). Her mother gives her money and then checks the receipt after she goes grocery shopping. (Id.).

Claimant also testified about her recent episodes of decompensation. (R. at 397–98). On one occasion, Spaulding became upset and panicked when her mother's washing machine flooded the kitchen floor, requiring her sister to come over to calm her down. (R. at 398). In another instance, Spaulding panicked after she accidentally locked herself out of her brother's house. (R. at 399). She had to go to the neighbors' house for help. (Id.). Spaulding further testified that this inability to deal with out of the ordinary occurrences affected her ability to maintain employment. (Id.). She also said that she understood that some of these problems result from injuries sustained in her accident. (R. at 400). Claimant explained that she was not "like this" before the accident. (Id.).

**Claimant's Mother's Testimony**

Claimant's mother, Ruth Organ, also testified on her behalf. Ms. Organ testified that Spaulding lives with her because she is not able to live on her own. (R. at 402). Ms. Organ explained that claimant is not able to work and has no income. (Id.). She testified that Spaulding has difficulty with math and cannot balance a checkbook on her

own. (R. at 402). Ms. Organ also explained that claimant is forgetful, has a very short term memory and has trouble following conversations. (R. at 403). She testified that Spaulding sometimes forgets to turn the stove off, forgets to lock doors at night and gets flustered by stressful situations. (R. at 406). Ms. Organ further testified that she often creates notes or lists to assist Spaulding in remembering things during the day. (R. at 407). She also testified that she felt Spaulding's memory problems interfered with her ability to hold a job. (R. at 406–07).

Ms. Organ testified that claimant currently does not have a problem with alcohol. (R. at 403). She explained that the last time she was aware that claimant had such a problem was when Spaulding stopped taking her medications regularly and attempted suicide. (R. at 404-05). Ms. Organ testified that there is no alcohol in their house. (R. at 405). Ms. Organ further testified that, in her opinion, Spaulding's memory problems are not related to any kind of drinking problem. (R. at 407).

**LEGAL ANALYSIS**

**I.    Standard of Review**

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Charter*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the

Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). We will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

## II. Analysis Under the Social Security Act

Whether a claimant qualifies to receive DIB or SSI benefits depends on whether the claimant is "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176. The claimant

12

has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). If the claimant reaches step five, the burden shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

ALJ Mondi applied the five-step analysis. His findings at step one through three are not contested. At step one, ALJ Mondi determined that Spaulding had not engaged in substantial gainful activity since the alleged onset of the disability. (R. at 19). At step two, the ALJ found that Spaulding suffers from alcoholism with depression and anxiety along with residuals of a motor vehicle accident.[2] (R. at 15, 19). The ALJ found that these impairments were "'severe' medically determinable impairment[s]." (R. at 19). At step three, ALJ Mondi found that Spaulding's impairments did not meet or medically equal any impairment listed in Appendix 1, Subpart P, at 20 C.F.R. § 404. (*Id.*). At step four, the ALJ found that Spaulding could perform past relevant work. (*Id.*). At step five, ALJ Mondi found that "even assuming that claimant's past work was more than unskilled (and thus beyond her residual functional capacity), the Commissioner can in any case show that other jobs exist in significant numbers in the economy that claimant can perform." (R. at 18). Therefore, the ALJ determined that Spaulding was not under a disability, as defined by the Social Security Act, at any time through the date of his decision. (R. at 19).

---

[2] The ALJ's opinion states that claimant also alleges disability due to physical problems following her motor vehicle accident, including a broken hip and pelvis. (R. at 17). However, after reviewing the record and claimant's motion for summary judgment, this Court finds that Spaulding's claim for disability benefits relates solely to her mental condition (including alleged memory problems) and not her physical condition. (R. at 44, 105, 116, 374-77).

Spaulding contends that the ALJ improperly weighed the medical opinions in the record, failed to consider the evidence in its entirety and erred in rejecting the claimant's credibility.

## III. The ALJ's RFC Determination is not Supported by Substantial Evidence or Free From Legal Error

The ALJ found that claimant has the residual functional capacity ("RFC") to perform unskilled, light work. (R. at 16). The ALJ noted that the claimant is limited to unskilled work because the record shows that she is moderately limited in her abilities to understand, remember and carry out detailed instructions. (Id.).

### A. The ALJ Failed to Adequately Explain the Weight Given to Dr. Belford's Opinion

After treating Spaulding for nearly three years, Dr. Belford opined that claimant was permanently disabled due to major depression and panic disorder. (R. at 271). Dr. Belford further stated that Spaulding could not return to her previous job nor did she expect Spaulding to improve to the point where she could function on a consistent basis in any work environment. (Id.).

The ALJ could not give controlling weight to Dr. Belford's opinion that claimant is permanently disabled because the final determination of whether an individual is disabled under the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2); SSR 96-5p. However, opinions from medical sources on issues reserved to the Commissioner must never be ignored. SSR 96-5p. Indeed, the ALJ must:

> evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record

14

contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record. SSR 96-5p.

Moreover, the ALJ must give specific reasons for the weight given to all treating source medical opinions and those reasons must be supported by the evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p (stating the ALJ's opinion "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.").

Here, ALJ Mondi found that Dr. Belford's opinion did "not warrant controlling weight since [sic] inconsistent with the overall record, including [Dr. Belford's] own records, showing significant improvement in claimant's mental condition when she abstains from alcohol and is medically compliant." (R. at 17). First, it is not clear from the ALJ's opinion whether he evaluated all of the evidence in the record to determine the extent to which Dr. Belford's opinion is supported by the record. Second, the ALJ failed to adequately explain why he rejected Dr. Belford's opinion. Instead, the ALJ simply concluded that Dr. Belford's opinion was inconsistent with the overall record. However, the ALJ never explained what evidence in the record he found to be inconsistent with Dr. Belford's opinion. Thus, the ALJ failed to comply with both SSR 96-5p and SSR 96-2p.

The Commissioner argues that this is a case of conflicting opinions. Contrary to the Commissioner's suggestion, however, the ALJ never discussed any conflict

15

between Dr. Belford's and Dr. Mehta's opinions. This Court will not sustain the ALJ's decision based on the Commissioner's after-the-fact arguments. *Steele*, 290 F.3d at 941 (noting that principles of administrative law confine our review to the reasons supplied by the ALJ and therefore, the ALJ, not the Commissioner's lawyers, must "build an accurate and logical bridge from the evidence to [his] conclusion."); *Salazar v. Barnhart*, 2004 U.S. Dist. LEXIS 24045, *25 (N.D. Ill. 2004) (stating that "[t]his Court may not justify the ALJ's determination with post hoc rationale and will not sustain the ALJ's decision based on the Commissioner's motion for summary judgment.").

The ALJ also found that Dr. Belford's opinion did not warrant controlling weight because it was inconsistent with her own records, including those showing significant improvement when claimant "abstains from alcohol and is medically compliant." (R. at 16-17). After reviewing Dr. Belford's records, this Court fails to see how the records are inconsistent with Dr. Belford's opinion that claimant is unable to work due to major depression and panic disorder. Moreover, evidence of improvement does not necessary correlate to the claimant being able to work.

Simply put, the ALJ's reasons for rejecting Dr. Belford's opinion are not adequately explained nor are they supported by evidence in the record. As a result, we cannot find that his RFC determination is supported by substantial evidence and free from legal error. Accordingly, remand is appropriate. On remand, the ALJ needs to evaluate the extent to which Dr. Belford's opinion is supported by the record in accordance with SSR 96-5p. The ALJ also must give specific reasons for the weight given to Dr. Belford's opinion and those reasons must be supported by the evidence in the record. SSR 96-2p.

**B.    The ALJ Failed to Adequately Explain the Weight Given to the Opinion of the State Agency Psychologist**

The ALJ relied on and adopted the RFC assessment of Dr. Carl Harmsmeyer, the State agency reviewing psychologist. (R. at 17). Dr. Harmsmeyer found that claimant is moderately limited in her ability to understand, remember and carry out detailed instructions. (R. at 335–36). Dr. Harmsmeyer also found that Spaulding "has the mental capacity to perform simple tasks." (*Id.*). The ALJ adopted Dr. Harmsmeyer's opinion because it was "consistent with the medical evidence and claimant's activities." (R. at 17). However, once again, the ALJ failed to explain how Dr. Harmsmeyer's opinion is consistent with the medical evidence or claimant's activities. Indeed, the ALJ failed to point out any evidence in the record he found to be consistent with Dr. Harmsmeyer's opinion.

The Commissioner argues that the ALJ was entitled to rely on the opinion of the State agency psychologist. The ALJ can do so, but only if he adequately explains the weight given to that opinion in accordance with 20 C.F.R. § 404.1527(f)(2)(ii). Section 404.1527(f)(2)(ii) provides that, unless the treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of a State agency medical or psychological consultant, as the ALJ must do for any opinions from treating sources, nontreating sources, and other nonexamining sources. 20 C.F.R. § 404.1527(f)(2)(ii). Therefore, the ALJ was required to give specific reasons for the weight given to Dr. Harmsmeyer's opinion and those reasons must be supported by evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. As stated above, the ALJ failed in this regard. Consequently, his RFC determination cannot stand.

The ALJ's RFC determination is not supported by substantial evidence because he failed to sufficiently articulate his assessment of the evidence to enable us to trace the path of his reasoning. Therefore, remand is appropriate. *Clifford*, 227 F.3d at 870 (recognizing that an ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability.").

## C.     The ALJ Failed to Consider the Evidence in its Entirety

Next, claimant argues that the ALJ concentrated mainly on her alcohol use and failed to consider evidence which demonstrates that even when she abstains from alcohol, she still suffers from depression, anxiety and residuals from an organic brain injury. We agree.

An ALJ's RFC assessment must be based on all of the relevant evidence in the record. SSR 96-8p. Here, however, the ALJ focused almost entirely on evidence relating to claimant's alcohol abuse. Indeed, ALJ Mondi stated that Spaulding's medical records "make it clear that alcoholism is claimant's main mental problem as they show significant improvement in her condition when abstinent and medically compliant." (R. at 17). The ALJ also found that alcoholism and non-compliance were material causes of claimant's worsened condition around the time of her suicide attempt. (R. at 18). Consequently, ALJ Mondi found that there was no closed 12-month period during which the claimant's mental impairments prevented her from working. (*Id.*). The ALJ further stated that "even if the record could be construed to establish a 12-month period when claimant's mental limitations would have prevented work, the materiality of alcoholism would bar benefits in accordance with changes to the Social Security Act made by [42 U.S.C. § 423(d)(2)(C)]." (*Id.*).

Section 423(d)(2)(C) provides that an individual shall not be considered to be disabled for purposes of the Social Security Act "if alcoholism or drug addiction would .... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). However, § 423(d)(2)(C) does not provide that a claimant with an addiction disorder should be denied disability benefits even where there is a component of mental illness separate and apart from the addiction disorder. *Jarmon v. Barnhart*, 2004 U.S. Dist. LEXIS 5540, at *23–24 (N.D. Ill. 2004). To the contrary, SSA regulations require the ALJ to consider "the combined effect of all of [the claimant's] impairments" when making a disability determination. 20 C.F.R. § 416.923; *see also, Goodson v. Barnhart*, 217 F. Supp. 2d 892, 902 (N.D. Ill. 2002) (stating that the ALJ must look to the combined effect of all of a claimant's impairments).

Therefore, the ALJ was required to address the effects of claimant's other mental impairments, including her depression, anxiety and brain injury, separately from her alcohol problem. The ALJ failed to do so. (R. at 16-18). This is particularly troubling because the record demonstrates that claimant's mental impairments persist even when she refrains from using alcohol. For instance, between August 2000 to January 2003, Dr. Belford noted alcohol dependence only twice, yet she consistently diagnosed claimant with major depression. (R. at 272–283). Dr. Belford also diagnosed claimant with generalized anxiety disorder and panic disorder. (R. at 272-74). Dr. Mehta saw claimant from May 2003 until June 2004. Her records reflect that claimant was abstaining from alcohol. (R. at 352-55). Nevertheless, Dr. Mehta consistently diagnosed claimant with generalized anxiety disorder and recurrent major depression

with psychosis. (R. at 350-58). Moreover, throughout this entire period of time, claimant was taking a variety of psychiatric medications to control her depression, anxiety, panic attacks and insomnia. (R. 272-83, 347-59).

Furthermore, the record demonstrates that claimant's traumatic brain injury caused memory and concentration problems. For instance, Dr. Baukus diagnosed claimant with traumatic brain injury and indicated that her testing results were consistent with an individual that had suffered brain damage. (R. at 185). His records indicate that claimant had trouble with arithmetic, concentration, judgment and her memory. (R. at 181-87, 252-53). Additionally, claimant's mother testified that Spaulding has memory problems, that she cannot work or even balance a checkbook and that she cannot handle unforeseen circumstances.[3] (R. at 401–408).

The ALJ failed to analyze the evidence supporting Spaulding's claim that her mental impairments persist even when she refrains from using alcohol. Specifically, the ALJ failed to analyze how claimant's depression and anxiety, combined with her memory, arithmetic and concentration deficiencies, affect claimant's ability to work. Based on the foregoing, we find that the ALJ failed to consider all of the relevant evidence in compliance with SSR 96-8p. Accordingly, remand is warranted.

## D. The ALJ's Credibility Determination Fails To Comply With SSR 96-7p

Spaulding also contends that the ALJ erred in assessing her credibility. An ALJ must comply with the requirements of Social Security Ruling 96-7p in evaluating the credibility of statements supporting a Social Security application. *Brindisi v. Barnhart*,

---

[3] Claimant's mother also testified that her daughter's memory problems are not a result of any current problem with alcohol. (R. at 407).

315 F.3d 783, 787 (7th Cir. 2003). Under SSR 96-7p, an ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight the adjudicator gave to the [claimant's] statements and the reasons for that weight." SSR 96-7p.

Moreover, in assessing the claimant's credibility, the ALJ "must consider the entire case record, including the objective medical evidence, the [claimant's] own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the [claimant], and any other relevant evidence in the case record." Id.

Here, the ALJ found that Spaulding's testimony was not credible in establishing disabling limitations "when compared against the objective evidence and evaluated using factors in SSR 96-7p." (R. at 17). In particular, the ALJ stated that a disabling mental condition was not shown "given the improvement in claimant's mental state when she is compliant, much more so without claimant's alcoholism being material." (R. at 17-18).

While the ALJ did provide specific reasons for his credibility finding, it is not clear to this Court that the ALJ considered the entire case record in assessing claimant's credibility. For instance, the ALJ failed to address claimant's mother's testimony. Ms. Organ testified about Spaulding's memory problems, her inability to work, her inability to balance a checkbook and the fact that claimant cannot handle unforseen circumstances. (R. at 401–408). Furthermore, as discussed above, the ALJ failed to analyze the evidence in the record supporting Spaulding's claim that her mental

21

impairments persist even when she refrains from using alcohol. (R. at 181-87, 252-53, 272-83, 347-59).

Because the ALJ failed to consider the entire case record in accordance with SSR 96-7p, we cannot conclude that the ALJ's credibility determination is supported by substantial evidence. On remand, the ALJ must demonstrate that he considered all of the evidence in the record in accordance with SSR 96-7p.

**CONCLUSION**

For the reasons set forth above, Spaulding's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion. It is so ordered.

**ENTER:**

**MICHAEL T. MASON**
**United Stated Magistrate Judge**

**Dated: May 25, 2006**